Eugene MEICHE, III, Appellant,

v.

PLYMOUTH ACCEPTANCE CORPORA-
TION, Appellee.

No. 15269.

Court of Civil Appeals of Texas,
San Antonio.

Feb. 27, 1974.

Marquis E. Whittington, Sawtelle, Goode, Davidson & Troilo, San Antonio, for appellant.

Sorrell, Anderson & Sorrell, Corpus Christi, for appellee.

CADENA, Justice.

Plaintiff, Eugene Meiche, III, a resident of Bexar County, appeals from an order of a district court of Bexar County sustaining the plea of privilege of Plymouth Acceptance Corporation (referred to in this opinion as "Plymouth"), one of two defendants below. The other defendant named in the suit filed by plaintiff in Bexar County was Pacific Employers Indemnity Company, which will be identified in this opinion as "Pacific."

Plaintiff's petition may be summarized as follows:

(1) On February 18, 1972, Pacific issued to plaintiff a "Texas Family Automobile Policy" insuring plaintiff's car against theft and other losses. Plaintiff obtained the policy through Pacific's agent in San Antonio, Bexar County, Julian Rodriguez General Insurance Agency, which will be referred to in this opinion as "Rodriguez." The premium for this policy was financed, through Rodriguez, by Plymouth.

(2) Plaintiff's automobile was stolen on September 15, 1972, and when it was recovered the following day, it had been damaged to the extent of $1,600 as the result of being "stripped" and burned. Plaintiff timely notified Pacific of the loss, but Pacific has denied liability.

(3) Plaintiff timely made all "payments to finance the policy" either to Rodriguez or directly to Plymouth. However, Rodriguez, as agent for Pacific or, "in the alternative," as agent for Plymouth, did not forward such payments to Pacific or to Plymouth. As a result, on September 18, 1972, three days after plaintiff's automobile was stolen, Plymouth notified plaintiff that the insurance policy "had been cancelled for nonpayment of premiums." After receiving such notice from Plymouth, plaintiff made all payments directly to Plymouth at its principal office in Corpus Christi, Nueces County. Plymouth accepted these payments, but subsequently returned such payments to plaintiff by sending him a check which he has not cashed.

(4) The cancellation of the insurance policy by Plymouth was wrongful, since plaintiff had timely made all payments to Rodriguez, who was the agent for Pacific, or, in the alternative, the agent for Plymouth.

After Plymouth had asserted its privilege to be sued in Nueces County, where it maintains its principal office, plaintiff filed his controverting affidavit asserting that the suit was maintainable in Bexar

County under subdivisions 23 and 29 of the venue statute, Article 1995, Vernon's Tex. Rev.Civ.Stat.Ann. (1964). However, in his brief in this Court, plaintiff relies solely on subdivision 23.

Under subdivision 23, a suit against a corporation may be brought in the county in which the corporation has its principal office; ". . . or in the county in which the cause of action or part thereof arose; or in the county in which the plaintiff resided at the time the cause of action or part thereof arose, provided such corporation . . . has an agency or representative in such county . . .."

It is undisputed that Plymouth is a corporation.

■ A plaintiff relying on subdivision 23 who is not suing such corporation in the county in which it maintains its principal office must establish by a preponderance of the evidence the existence of *all* elements of a cause of action against the corporation whose plea of privilege he is contesting. Employers Casualty Co. v. Clark, 491 S.W.2d 661 (Tex.1973).

Plaintiff describes his suit as one based on the wrongful cancellation of the insurance policy. It is clear that if, under the facts of this case, Plymouth had a right to effect a cancellation of the policy, plaintiff has failed to prove that such cancellation was wrongful and, consequently, has failed to prove a cause of action against Plymouth.

Under the financing agreement, plaintiff was obligated to make eight monthly payments, each in the amount of $19.11, beginning on March 18, 1972. Shortly after the agreement was executed, plaintiff received in the mail from Plymouth an "Insurance Premium Contract Book," which instructed plaintiff to mail the "proper coupon with check or money order" each month to Plymouth's office. The coupon book also bore the following instruction: "Send to: P. A. C. Box 4823–:– Corpus Christi, Texas 78408."

Under a provision of the written financing agreement, plaintiff appointed Plymouth as his attorney in fact with "full power and sole authority to effect cancellation" of the policy if any installment was not paid within five days after it was due. It was under this provision that Plymouth, by notice to Pacific and Rodriguez, effected the cancellation of the policy.

Plaintiff made the March, April, May, June, July and August, 1972 payments to Rodriguez at the office of Rodriguez in San Antonio, rather than mailing such payments to Plymouth in Corpus Christi. It was not until after he received notice that Plymouth had effected a cancellation of the policy due to nonpayment of the installments called for by the financing agreement that plaintiff began mailing the payments to Plymouth in Corpus Christi. There is no evidence that the payments made by plaintiff to Rodriguez were ever delivered by Rodriguez to Plymouth. In fact, plaintiff alleged in his petition, which was incorporated into and made a part of his sworn controverting plea, that Rodriguez did not deliver such payments to Plymouth, and plaintiff testified that he did not know what had happened to the payments he made to Rodriguez.

Plaintiff's claim that Plymouth wrongfully effected a cancellation of the policy is based on the contention that Rodriguez was Plymouth's agent, authorized to receive the payments made by plaintiff.

The financing agreement was executed by plaintiff in the office of Rodriguez in San Antonio. The agreement was on a printed form which bears, at the top, the words, "Premium Financing Contract" and "PLYMOUTH ACCEPTANCE CORPORATION." We accept plaintiff's contention that such language permits the inference that the form was prepared by Plymouth and furnished by it to Rodriguez.

After identifying the policy and the insurer, the agreement sets out the amount of the premium, the amount of down payment made by plaintiff, the amount fi-

nanced, the finance charge, the total to be repaid by plaintiff and the number and amount of monthly payments.

According to the agreement, plaintiff assigned to Plymouth ". . . all returned premiums, all dividends, and all losses which are or may become payable to the Undersigned [plaintiff] under the . . ." policy. The contract then recites that until the assignee (Plymouth) has been paid the amount owing by plaintiff, plaintiff appoints the "assignee" as plaintiff's agent, with power and authority to do several things, including, as pointed out above, to effect a cancellation of the policy in the event of default by plaintiff. Only plaintiff's signature appears on the agreement.

Directly under plaintiff's signature and address appear the words: "AGENT'S STATEMENT (Must be signed on every contract)." This is followed by language to the effect that Rodriguez assigns all of his rights under the contract to Plymouth and that, in consideration of Plymouth's acceptance of the contract, Rodriguez, ". . . as an individual . . . and not as . . ." Plymouth's agent, warrants that the information "listed" in the contract is accurate and valid; that plaintiff's signature on the contract is genuine; and that, in case of delinquency, Rodriguez, upon notice from Plymouth, ". . . will cancel said policy." Rodriguez further agrees that he will deliver the original policy to Plymouth and that the policy will be retained by Plymouth until the terms of the contract are fulfilled. This portion of the document is signed by Rodriguez, with his signature appearing over the words, "Agent's Signature."

On the face of the document there appears a stamp with the words, "Plymouth Acceptance Corp." and the date of February 28, 1972.

■ The financing agreement and the "Agent's Statement" are insufficient to establish that Rodriguez was the agent of Plymouth for any purpose. Since the agreement does not bind Plymouth to do anything, it cannot be said that Rodriguez, who did not sign the financing agreement on behalf of Plymouth or on behalf of himself, was purporting to do anything as Plymouth's representative. The recitals in the "Agent's Statement" signed by Rodriguez to the effect that *he*, at Plymouth's request, would cancel the policy in the event of default by plaintiff, and that *he* agreed to deliver the original policy to Plymouth indicate, instead, that he was acting as agent of the insurer, Pacific, since there is nothing to indicate a capacity on the part of Rodriguez to carry out these undertakings except as a representative of Pacific.

■ In any event, the financing agreement and the "Agent's Statement," even when viewed in the light most favorable to plaintiff, can be said to do no more than raise a fact question concerning the status of Rodriguez. Since the trial court sustained Plymouth's plea of privilege and no findings of fact or conclusions of law were requested or filed, it must be presumed that the trial court resolved this question in favor of Plymouth. Even if we ignore the fact that the financing agreement is silent as to the place of payment and the fact that Plymouth expressly notified plaintiff to make the payments to Plymouth at its Corpus Christi office, it cannot be said that the trial court abused its discretion in determining that Rodriguez was not the agent of Plymouth authorized to receive, on Plymouth's behalf, plaintiff's payments.

Plaintiff, therefore, failed to prove that he had made the required payments to Plymouth or to anyone authorized to receive such payments for Plymouth. It follows that he failed to establish a cause of action against Plymouth, since he failed to show that Plymouth's exercise of its right to effect a cancellation of the policy was wrongful.

The judgment of the trial court is affirmed.